HOWARD R. KELLOGG v. IDELL ANDREWS THOMAS AND HARRY THOMAS.

(Filed 7 November, 1956.)

1. **Automobiles § 7—**

A motorist driving on a level, straight road approaching a place on the highway protected by warning signs, where a number of men are working

and a ditching machine is in operation on the side of the highway, piling dirt some 6 feet on the hard surface, is required by law to take notice of conditions at the scene.

**2. Same—**

A motorist is under duty to drive with due caution and circumspection and at a speed or in a manner so as not to endanger or be likely to endanger person or property, and when special hazards exist by reason of highway conditions, to decrease speed as may be necessary to avoid collision with any person on or entering the highway. G.S. 20-140, G.S. 20-141.

**3. Same—**

Regardless of statute, it is the duty of a motorist to keep a proper lookout, and in approaching a place where men are working on or near the highway with plainly visible warnings and signs, to blow the horn and when the workman is apparently oblivious of danger, to drive at such speed and have the automobile under such control, in view of the situation, as to avoid injuring a workman.

**4. Automobiles § 33—**

A workman crossing a highway in an area marked by signs reading "Men Working" is in a place where he has a lawful right to be and is entitled, when apparently oblivious of danger, to warning by horn of an approaching motorist. G.S. 20-174(e).

**5. Automobiles § 41l—**

Evidence tended to show that a motorist on a clear morning on a level, straight road, drove into an area protected by warning signs, with workmen and machinery clearly visible, at a rate of speed of 30 to 35 miles per hour, and, without blowing the horn or slackening speed, struck a workman crossing the highway, is sufficient to carry the case to the jury on the ground of negligence and proximate cause.

**6. Automobiles § 33—**

Evidence that a workman was employed in connection with the laying of a water main along the side of the highway, that he had just alighted from the employer's vehicle in the area where the work was progressing and was attempting to cross the highway when struck, is sufficient to support the inference that he was crossing the highway in the performance of the duties of his employment and was therefore rightfully on the highway.

**7. Same—**

A worker laboring at his job on a highway protected by warning signs does not occupy the same status as an ordinary pedestrian, and though he is required to exercise due care for his own safety in accordance with the rule of the reasonably prudent man in like circumstances, while engaged in the performance of his duties requiring the diversion of his attention from approaching traffic, is not required to exercise the same vigilance to traffic as an ordinary pedestrian. This exception to requirement of vigilance to traffic does not apply if the workman is not at a place his work requires him to be or if he is not engaged in work requiring diversion of his attention.

**8. Same—**

A workman engaged in the performance of his duties on or along a highway protected by warning signs has the right to assume that motorists will see the warning signs and the extraordinary conditions plainly visible in the area, and so operate the automobile and keep it under such control as not to endanger or be likely to endanger any workmen in the area.

**9. Automobiles § 42k—**

Whether plaintiff workman was guilty of contributory negligence in attempting to cross the highway in front of defendant's car without seeing the car until it was approximately 20 feet from him, *held* a question for the jury upon evidence tending to show that he first looked in both directions before attempting to cross, that defendant's car was traveling at excessive speed under the plainly visible conditions and failed to give warning of its approach, and that plaintiff was in the performance of his duties at the time and had a right to be on the highway, and the granting of nonsuit on the ground of contributory negligence was error.

**10. Automobiles § 54f—**

Admission of the male defendant that he was the owner of the automobile being operated by his wife and that she was operating it with his consent at the time, takes the issue of *respondeat superior* to the jury under the provisions of G.S. 20-71.1.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Stevens, J.,* March Term 1956 of NEW HANOVER.

Civil action for damages for personal injuries.

This is a summation of the evidence favorable to the plaintiff:

On 25 June 1953 plaintiff was employed by Henry von Oesen, who was doing the engineering work for the laying of a water main within the corporate limits of the Town of Burgaw along State Highway No. 53. His job was to run the instrument, and his foreman read the chain. He left Wilmington with the engineering crew in an automobile, called a carry-all, and arrived within the corporate limits of Burgaw about 9:30 a.m. Within the limits of the town the carry-all was parked in the middle of a town block on the right shoulder of the highway as one goes from Wilmington to Kenansville. The carry-all was parked off the highway: its right wheels were over by the ditch. Two automobiles were parked on the side of the highway ahead of the carry-all, and two behind it.

Across the road from the parked carry-all was a ditch digging machine of N. E. Brewer Company, which company was ditching and laying cast iron water mains within the town limits. The engine of the machine was running, the machine was ditching and making a loud noise. The ditch being dug was about 36 inches deep, and was about six feet from the pavement of the highway. The pavement of the high-

way was about 16 feet wide, and the dirt thrown from the ditching operation covered a good 6 feet of the highway.

The work being done by the ditching machine was about 200 feet long. 50 feet from each end of the work two warning signs were placed 50 or 75 feet apart in the center of the highway. These warning signs had on them words in black letters about six inches high on a yellow background. The signs farthest from the ditching machine were about a foot by a foot and a half in size, and had on them the words "Men Working": the signs closest to the machine were 4 feet square with the words "Slow, 15 Miles an Hour" thereon. The carry-all was parked 50 or 75 feet past the second warning sign, which was closest to the ditching machine. 14 men were working in that area.

The highway approaching the warning signs from both directions was level and straight for some distance. It was a clear bright morning with the sun shining.

Plaintiff got out of the right front door of the carry-all, and walked in front of it. These are his words: "When I reached the edge of the highway, I looked to the left and right. I did not see any traffic within the last warning sign at the time I looked to the left, and I did not see any traffic on the other side. After I looked, I stepped out on the highway. I took approximately two steps. I noticed a car coming, but it was too late to avoid getting hit. The right front fender of the car hit me." Robert Benson, a witness for the plaintiff, testified he was 15 feet from plaintiff when he was struck, and that plaintiff when hit by the automobile was closer to the white line in the center of the road than he was to the side, and must have been five or six feet in the road. On cross-examination plaintiff said he first saw the car 15 or 20 feet away, and that it was so close to him that he could not get out of its way at the speed it was traveling. There was nothing in the highway to prevent him from seeing an automobile approaching from either direction. Plaintiff and plaintiff's witnesses, who saw the car strike him, heard no signal, by horn or otherwise, given by the approaching car. The right front bumper of the car struck plaintiff's leg.

The automobile, which struck plaintiff, was driven by Idell Andrews Thomas, the female defendant. She is the wife of Harry Thomas, the male defendant. The complaint alleges that the automobile was owned by Harry Thomas as a family purpose car, and that at the time Idell Andrews Thomas was driving it as a family purpose car with the knowledge, consent and permission of her husband, and for family purposes as his agent, servant and employee, and within the scope of her agency or employment, and for purposes of family use. The joint answer of the defendants admits that the automobile at the time was being operated by the female defendant with the consent of the male defendant

who owned it, but the other allegations of the complaint set forth above are denied.

The female defendant was driving the car on Highway No. 53 going in the direction of the Town of Kenansville. J. H. Huffham, pipe foreman for the N. E. Brewer Company, and a witness for plaintiff, testified that he first saw the automobile driven by the female defendant within the area, which had warning signs, about 75 feet from the last sign bearing the words "Slow, 15 Miles an Hour." That he observed the car continuously from then until it struck plaintiff, and that in his opinion the automobile was traveling at a speed of 30 to 35 miles an hour. From the time the defendant passed this sign, he could not notice that she slackened her speed at any time. The car gave no signal by horn or otherwise of its approach. The right front bumper of the car struck plaintiff throwing him into the air, and the car went down the road about 100 feet before it stopped, according to one witness, and about 50 feet according to another. Plaintiff fell from the air about 15 feet down the road and on its edge. Plaintiff testified: "I remember saying I didn't see her, and she told me the same thing."

The defendants pleaded contributory negligence of the plaintiff as a defense.

At the close of plaintiff's case the defendants made a motion for judgment of nonsuit. The court allowed the motion "on the ground that plaintiff's negligence was a contributing cause of his injuries."

From the judgment entered, plaintiff appeals.

*Hogue & Hogue and Elbert A. Brown for Plaintiff, Appellant.*
*McClelland & Burney for Defendants, Appellees.*

PARKER, J. Plaintiff's case is not that of an ordinary pedestrian crossing a highway, nor that of a workman actually at work on the road with warning signs displayed in the road for his protection. Plaintiff was a workman crossing the road under the protection of signs placed in the center of the highway 50 feet from each end of the work being done, bearing the words "Men Working" and "Slow 15 Miles an Hour," and under conditions in the protected area of 14 men working, of the ditching machine in operation making a loud noise, and of dirt thrown from the ditching machine covering a good 6 feet of the 16 feet width of the hard surfaced portion of the highway.

Mrs. Thomas on a clear, bright morning with the sun shining was driving an automobile approaching this area of work and driving into it on a level, straight road. The extraordinary conditions on the highway ahead of her were plainly visible, and of these conditions she was required by law to take notice. *Chaney v. Moore,* 101 W. Va., 621, 134

S.E. 204, 47 A.L.R. 800; 5 Am. Jur., Automobiles, p. 611; 60 C.J.S., Motor Vehicles, pp. 956-957.

"It is the duty of the driver of a motor vehicle not merely to *look,* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen." *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330.

G.S. 20-140 required Mrs. Thomas at all times to drive her automobile with due caution and circumspection and at a speed or in a manner so as not to endanger or be likely to endanger any person or property, and G.S. 20-141 made a similar requirement that she shall operate her automobile with due regard to the width, traffic and condition of the highway, and, when special hazard exists by reason of highway conditions, speed shall be decreased as may be necessary to avoid collision with any person on or entering the Highway. *Singletary v. Nixon,* 239 N.C. 634, 80 S.E. 2d 676. These statutes prescribe a standard of care, "and the standard fixed by the Legislature is absolute." *Aldridge v. Hasty,* 240 N.C. 353, 360, 82 S.E. 2d 331.

Regardless of statutes regulating the operation of automobiles, it was the duty of Mrs. Thomas in the operation of her automobile to exercise the care which a person of ordinary prudence would exercise under similar conditions to prevent injury to persons on the highway: that is, it was her duty in keeping a proper lookout to see and take notice of the signs advising her that the portion of the highway on which she was about to enter had men working on or near it, to blow her horn giving notice of her approach or attempt to pass the place where work was going on to any workman crossing the road apparently oblivious of her approach, and to drive at such a speed, and at all times to have her automobile under such control in view of the situation, as to avoid injuring such a workman. *Henderson v. Henderson,* 239 N.C. 487, 80 S.E. 2d 383; *Williams v. Henderson,* 230 N.C. 707, 55 S.E. 2d 462; *Wall v. Bain, supra; Murray v. R. R.,* 218 N.C. 392, 401, 11 S.E. 2d 326; 5 Am. Jur., Automobiles, sec. 194; 60 C.S.J., Motor Vehicles, pp. 956-957, and sec. 288; Blashfield Cyclopedia of Automobile Law and Practice, Vol. 2A, sec. 1571; 47 A.L.R. 807-808; Anno. 5 A.L.R. 2d pp. 761-764.

G.S. 20-174(e) requires every driver of a motor vehicle to give warning to pedestrians upon any roadway by sounding the horn when necessary. *Williams v. Henderson, supra.* A workman crossing a highway in an area marked by signs reading "Men Working" is in a lawful place where he has a right to be, and consideration must be given to that fact. Certainly such workman, when apparently oblivious of danger, is entitled to a signal of approach as much as, if not more than, an ordinary pedestrian in the highway. "A driver of a vehicle being warned by barriers, signs, or other evidences of the presence of workmen in the

street must in the exercise of due care be cognizant of the fact that such workmen may not constantly attend to traffic, and his conduct should be in the light of such knowledge." *Reid v. Owens,* 98 Utah 50, 93 P. (2d) 680, 126 A.L.R. 55.

The evidence tending to show that Mrs. Thomas, on a clear, bright morning and on a level, straight road, warned by signs in the highway "Men Working" and "Slow 15 Miles an Hour," which it was her duty in the exercise of ordinary care to see, drove into this area at a rate of speed of 30 to 35 miles an hour, that the eye witnesses heard her give no signal of her approach, that six feet of the highway had dirt on it from a ditching operation, that the ditching machine was making a loud noise, that 14 men were working in the area, that the plaintiff was crossing the highway apparently oblivious of her approach, and that without slackening speed she struck him with her automobile, is sufficient to carry the case to the jury against her on the ground that she was negligent, and such negligence was a proximate cause of plaintiff's injuries.

Plaintiff was employed by Henry von Oesen, who was doing the engineering work for the laying of a water main for the Town of Burgaw. His job was to run the instrument—the evidence does not show what sort of instrument it was—and his foreman read the chain. N. E. Brewer Company was ditching and laying cast iron water mains for the town within its corporate limits. A carry-all brought Oesen's engineering crew to the place protected by warning signs reading "Men Working" and "Slow 15 Miles an Hour," and parked on the shoulder of the highway opposite from the Brewer Company's ditching machine, which was in operation making a loud noise. Plaintiff got out of the carry-all, which had two automobiles parked on the shoulder of the highway ahead of it, and two parked likewise behind it, went around the front of it, looked in both directions, and seeing no approaching vehicle within the last warning sign started to cross the highway toward the ditching machine. According to his testimony he had taken two steps into the highway, and according to Robert Benson's testimony he was near the center line of the highway, when an automobile driven by Mrs. Thomas at a speed of 30 to 35 miles an hour with no signals given of its approach—the eye witnesses testified they heard no signals— collided with him. He was struck by her right front bumper, hurled into the air and down the road about 15 feet. The evidence does not disclose why plaintiff was crossing the road, and does not show whether he was carrying anything in his hands or not. Considering the evidence in the light most favorable to plaintiff, as we are required to do on a motion for judgment of nonsuit, it would seem to be a fair inference that he was crossing the highway in the performance of the duties of

his employment. If so, plaintiff was rightfully on the highway in the performance of his work.

A worker, whose duties of employment require his presence at work on a street or highway protected by warning signs of "Men Working" and "Slow 15 Miles an Hour," cannot utterly disregard the matter of his own safety. However, he occupies a different status from an ordinary pedestrian crossing a street, and this status must be considered in determining the degree of care he must exercise for his own safety, and in determining the question of contributory negligence. Because he is not required to neglect his work to escape collision with motorists not exercising reasonable care for his safety, or not obeying statutes regulating in the interests of public safety the operation of motor vehicles, he is not obliged to keep a constant lookout for approaching vehicles, and his failure to do so, does not necessarily constitute contributory negligence as a matter of law. Whether such a worker has exercised reasonable care for his own safety in view of his work and surrounding circumstances is ordinarily for the jury under proper instructions from the court. *Byrd v. Galbraith*, 172 Ark. 219, 288 S.W. 717; *State Comp. Ins. Fund v. Scamell*, 73 Cal. App. 285, 238 P. 780; *Mecham v. Crump*, 137 Cal. App. 200, 30 P. 2d 568; *Pfaff v. H. T. Smith Exp. Co.*, 120 Conn. 553, 181 A. 621; *Dube v. Keogh Storage Co.*, 236 Mass. 488, 128 N.E. 782; *O'Donnell v. Lang*, 162 Mich. 654, 127 N.W. 691, Ann. Cas. 1912 A. 847; *Lozio v. Perrone*, 111 N.J.L. 549, 168 A. 764; *Cecola v. 44 Cigar Co.*, 253 Pa. 623, 98 A. 775; *Riley v. Tsagarakis*, 50 R.I. 62, 145 A. 12; 5 A.L.R. 770 *et seq.;* 61 C.J.S., Motor Vehicles, pp. 69-70; Blashfield Cyc. of Automobile Law and Practice, sec. 1577.

*Winborne, J.*, now *C. J.*, said for the Court in *Murray v. R. R., supra:* "A laborer whose duties require him to be on the highway may assume that operators of motor vehicles will use reasonable care and caution commensurate with visible conditions, and that they will approach with their cars under reasonable control, and that they will observe and obey the rules of the road." If a worker laboring at his job on a highway protected by warning signs should be required to exercise the same degree of care for his own safety as an ordinary pedestrian, it is obvious that in many instances, because of his failure to look almost continuously for approaching automobiles, it would be necessary to hold him guilty of contributory negligence as a matter of law.

The sound general rule that a workman laboring at his job on a highway is not required to exercise the same degree of care for his own safety required of an ordinary pedestrian does not apply where the worker is at a place where his work does not require him to be or is not actually engaged in work at the time of his injury which requires the diversion of his attention from approaching traffic, or to phrase it differently, if his particular activity at the time of his injury is one where he

is free to take precautions for his own safety. *Copertino v. Chrobak,* 346 Pa. 49, 29 A. 2d 504; *Reid v. Owens, supra; Gunning v. King,* 249 Wis. 176, 23 N.W. 2d 602; 61 C.J.S., Motor Vehicles, p. 70; 5 A.L.R. 2d 784; Blashfield op. cit. Vol. 2 A. pp. 518-519. It seems clear that when a worker, whose job requires his presence on a highway, is not engaged in some activity at the time of his injury which diverts his attention from vehicular traffic, but is merely in the act of crossing the highway in his work, he may be expected to exercise the same reasonable care for his own safety that an ordinary person is required to exercise under the same circumstances. 5 A.L.R. 2d 840.

However, as the Supreme Court of Utah said in *Reid v. Owens, supra:* "The circumstances may be such in a particular case that a workman crossing a street in the line of his work, though he be carrying nothing and doing nothing except crossing, would not be required to exercise the same degree of watchfulness as a pedestrian if barriers or signs have been placed or there is other evidence of work being prosecuted on or in the immediate vicinity of the street; but such a workman cannot be said to act as a reasonably prudent person under the circumstances if he is altogether indifferent to traffic hazards. What is due care depends on all the surrounding facts and circumstances. A workman actively laboring in the street must exercise due care. But that care must be determined from a different standpoint than the care to be exercised by a pedestrian on the same street. The former must devote some attention to the prosecution of his work; the latter is free of any duty which would interfere with keeping a vigilant lookout. A driver of a vehicle being warned by barriers, signs, or other evidences of the presence of workmen in the street must in the exercise of due care be cognizant of the fact that such workmen may not constantly attend to traffic, and his conduct should be in the light of such knowledge. He may not in case of injury to such a workman point to the latter's attention to his work as negligence on the latter's part. But a pedestrian devoting so much of his attention to other than the traffic as the workman devotes to his work may well be guilty of contributory negligence. A workman merely crossing a street should doubtless be required to be more watchful than one sweeping streets, shoveling dirt, repairing rails, or filling holes, whose duty not only compels him to be in the highway but also to devote a very large part of his attention to his work." See also: *Ellis v. Whitmeyer* (La. App.), 183 So. 77; *Riley v. Tsargarakis, supra; Leoni v. McMillan,* 287 Ill. App. 579, 5 N.E. 2d 742; *Sprinkle v. Davis,* 111 F. 2d 925, 128 A.L.R. 1101.

The plaintiff here, viewing the evidence in the light most favorable to him, was in the act of crossing the highway toward the ditching machine in the performance of the duties of his employment. Plaintiff was lawfully in the highway. He had a right to assume that Mrs. Thomas

would see the warning signals displayed in the road and the extraordinary conditions there visible, particularly of 14 men working in the area, that she would use reasonable care commensurate with such extraordinary visible conditions and special hazards then and there existing, and decrease her speed by reason thereof, to avoid collision with persons on or entering the highway, and so operate her automobile as not to endanger or be likely to endanger any person on or entering the area of men working, that she would observe and obey the rules regulating the operation of automobiles, and that she would drive through the area protected by these warning signs with her automobile under reasonable control. *Murray v. R. R., supra; Wall v. Bain, supra; Aldridge v. Hasty, supra; Weavil v. Myers,* 243 N.C. 386, 391, 90 S.E. 2d 733. "The extent of care which he was required to exercise depended upon all the dangers which he should reasonably have anticipated in the circumstances." *Ferrairs v. Hewes,* 301 Mass. 116, 16 N.E. 2d 674.

Plaintiff before entering the highway looked down the highway to the left and to the right, and seeing no cars within the last warning signs, stepped out into the highway and started to cross, and did not see Mrs. Thomas' automobile until it was too close to him to avoid getting hit. Whether the plaintiff under the extraordinary conditions there existing and plainly visible exercised the same care for his own safety that an ordinarily prudent man would have exercised for his own safety under such conditions is a question upon which reasonable men can draw different conclusions. In our opinion it cannot be held as a matter of law that the plaintiff is guilty of contributory negligence in view of all the attendant facts existing at the scene at the time of his injury. The right to trial by jury is a basic feature of our jurisprudence, and to deprive the plaintiff of the benefit of a jury trial, considering all the evidence in the light most favorable to him, would not seem to be justified here.

The defendants filed a joint answer in which it is admitted that the male defendant was the owner of the automobile being operated by his wife, and that she was operating it with his consent at the time. Such admission by virtue of the provisions of G.S. 20-71.1 is sufficient to carry the case to the jury on the question of the legal responsibility of the male defendant for the operation of the automobile by his wife. *Travis v. Duckworth,* 237 N.C. 471, 75 S.E. 2d 309.

The assignment of error that the court erred in nonsuiting the case is good.

Reversed.

JOHNSON, J., not sitting.